Case number 22-6185, Mandan, Hidatsa and Arikara Nation versus United States Department of the Interior, et al., State of North Dakota, Appellant. Mr. Ostlander for the Appellant, Ms. Sprague for the Department of the Interior, Appellee. Mr. Perkins for the Appellee, Mandan, Hidatsa and Arikara Nation. Good morning, Council. Mr. Ostlander, please proceed when you're ready. Thank you, Your Honor. Good morning. James Ostlander, Special Assistant Attorney General for Appellant State of North Dakota. May I please report. North Dakota asks only that it be allowed to continue its defense of this litigation, which damaging nation seeks a final award of riverbed mineral revenues produced within the state. Intervention is liberally granted in the circuit. It is rare to deny intervention to a sovereign state given the special solicitude that it's entitled to given United Supreme Court rulings. But we're aware of no other instance where intervention has been denied to a state involving disposition of property located within that state in which no other person has proven ownership. Given the uncertainties and the stakes in this litigation, including at the heart of the nation, with the full participation of the state as an interested intervener party. The historical riverbed lands and minerals are located within North Dakota. North Dakota has issued hundreds of leases covering these minerals and the royalties, rentals and bonuses from these leases exceed over $100 million. These are the same mineral revenues that the MHA nation demands through its remaining counts. So is that the purposes of the text of Rule 24? A one, two, I think is where we are. Is it requires that they're the intervener, the peer to intervene or claim an interest relating to the property or transaction? And the property that's the subject of the action is the royalty revenues? Yes, your honor. There's the riverbed lands themselves. There's the minerals underlying the riverbed and there are the revenues that have been derived from production of those things. So our understanding of the MHA nation's complaint is that it seeks ownership of all those things and ultimately receipt of the revenues through the accounting and the payment and its remaining. The state of North Dakota has issued mineral leases for the riverbed. Is that true? Yes, your honor. We submitted a declaration from David Shipman. There are over 255 leases that have been issued by North Dakota over the years. I believe all of these are active. Did those leases require approval of the Department of Interior? No, your honor. It's the sovereign state of North Dakota. Does the state of North Dakota or does the United States itself, has the United States issued mineral leases for the riverbed? My understanding, your honor, is the answer is no. The MHA nation, as I understand, has issued leases. Again, the reservation is right there. So there are a lot of leases issued by the MHA nation, which include upland areas as well. But I believe the MHA nation and its complaints stated that it has issued certain leases, but the United States has not approved any of those leases because they weren't recorded in trust title. Okay. Okay. Can I ask one question? So you don't dispute the notion that the litigation could go forward and come to a conclusion without a resolution of the issue that you're intending to assert? Your honor, I think we would dispute that because the remaining counts present squarely the issue of ownership of the riverbed and the associated revenues. So the reason that we want to continue intervention in the case, and this is under Neuse and other D.C. circuit cases, it doesn't matter that we're not going to be bound by the resolution. However, any final adjudication of ownership, including even there will be an award of the revenues, which are finite, right? The lands and the revenues are finite. But I guess what I'm saying is it's possible. I'm not saying that this necessarily means you don't get intervention. But what I'm saying is it seems possible that the district court could resolve the case in a way that doesn't resolve the ownership entitlement because the district court could have other reasons for saying the MHA nation's not entitled to prevail. Your honor, I think the court could decide against the MHA nation could deny them the relief without reaching the ownership issue. But I don't think the MHA nation can get the relief that it seeks in the case without establishing its ownership to the satisfaction of the district court. Right. Go ahead, Adriano. All right. Thank you. Wouldn't there be a problem with deciding the accounting issue, for example, without making a determination about ownership? Because then the court would be issuing an advisory opinion. And I have questions about whether that would even be proper under Article 3. Yes, your honor, we agree with you. The United States made an argument and it's great that, you know, how does an accounting harm the state besides sending notices to lessees that create confusion that are already under state lease? It sets off a question regarding the state's relationship with its lessees. But also to your point, your honor, what use is the information? Not to say anything about the story or needs to get information other than an accounting claim, if that's really what the MHA nation is after. I can't speak to the litigation strategy or what they seek, but I agree with your point, your honor. You said that the property that is the subject of the action is the riverbed and the associated royalties. But I thought that issue was, at least as to the existing litigation, that issue is not at stake in the case. Rather, the transaction that's the subject of the pending litigation is the trust relationship between the tribe and Interior. And I understand that their predicate assumption is, you know, includes ownership and that you can test that. But in terms of what is the subject of the pending litigation, I don't understand it to be anymore any question about ownership or title. Yeah, your honor, again, kind of through machinations in this case, the United States and the MHA nation now view, their view, the Interior's view is the same as the MHA nation now. But regardless of what relief that the government might afford outside of this litigation, and they've been involved in settlement discussions, there's been a say of the district court litigation for some time, I think since the denial of intervention. Whatever arrangement they may seek and whatever might come out of that arrangement, I can't really speak to, but litigation speaks, and I think it's on the opening paragraph of the MHA nation's brief, where they, you know, they say that this case involves issues between the MHA nation and Department of the Interior regarding ownership of the bed Missouri River and underlying mineral estate within the Fort Berthold reservation. Each of the four claims are variants on seeking the same relief, which is ultimately to walk away with money, a lot of which is held in escrow or held by lessees, has not been paid out to the state. So for the court to step in and say, yes, you're going to give our imprimatur to an award of relief, this money belongs to the MHA nation. Our position is that the court can't do that without determining, yes, there is a trust responsibility, and yes, there is money for owing to the MHA nation in the first place. So that's why we think that the district courts can't sidestep that on the convenience of the parties of sort of a general person's opinion. You want to argue, basically, a number of the points that the United States makes in its brief and beginning on about page 32 or 31 and somewhere around in there that the court should not reach out and make any kind of an adjudication about title or anything about who actually owns it. The only question is whether the tribe does, and if the tribe doesn't, then maybe the United States does, maybe North Dakota does. But it seems to me that your point is we should have a right to make those arguments and not have rely on the United States or the goodwill of the district court. Yes, Your Honor, and inadequate representation, which is the fourth factor under Rule 24, was not the ground on which the district court denied intervention. That's an argument that was raised by the United States on appeal. We believe that the United States is right the first time that they do not adequately represent the state's interests. Denial of intervention was based on the state of North Dakota not having an interest anymore. We just think it's strange for Julie to say that the state does not have an interest in, you know, hundreds of leases and hundreds of millions of dollars of minerals in this case. We just seek continued participation. That's really all that this bill concerns. So, Mr. Oslander, you said that intervener's view is now, I mean, I'm sorry, interior's view is now the same as the nation's, and it would seem that North Dakota's is adverse to that shared view. And, you know, an interior cannot represent North Dakota because it wouldn't robustly make these arguments, in fact, it doesn't agree with them as currently positioned. So, why isn't the Quiet Title Act an obstacle for you, given that, as you've described it, North Dakota's interest is adverse to the interest of the interior, and also, as you've described it, the interest of North Dakota is an interest in title? Your Honor, I mean, there's never been a quiet title case where an intervener has been not allowed to come in just to defend against the claims that have been brought by the plaintiff. And our position is that there's not a claim that we're making, and the Quiet Title Act was built so that, it was enacted so that there wouldn't be a claim brought by a third-party to cloud title. This is not a quiet title action. The United States of North Dakota has not brought this lawsuit. We filed no claim. We filed no expansion of the existing issues that have been put in play by the MHNA agent. You know, Judge Randolph, I think in your, one of your cases a while ago in 2011, Contract v. Salazar, you correctly stated the Quiet Title Act does not apply where a party is, quote, not seeking to quiet title, end quote. And North Dakota is not seeking to quiet title here. If the case ends, they don't, MHNA agent doesn't prevail, and if the issue goes to another day, that's a satisfactory outcome. But all that we're seeking is a sentence against this case that's in front of us right now that's brought by the MHNA agent. So you're, if you're not seeking any, to interject any claim that's not already in the case, spell out for me how your participation as an intervener would differ from your participation, let's say, as an amici to make arguments about where the court should and shouldn't go as a remedial matter. Your Honor, I believe, you know, we did not move and the court, district court, did not afford the opportunity for amici, but our position as amici is insufficient. You know, party status would give us the ability to file briefs in the form, of course, the briefing schedule would give us a full seat at the table. But more concretely, I mean, I understand in general. Most importantly, Your Honor, it would give the state a full seat at the table, given the stakes in the case, and just filing an amicus brief regarding how the state believes the ownership issue should go, I believe that that would be insufficient. Your position is not adverse, it seems to me, to the United States in one respect, because the way I read the brief of the United States, it is that we're going to tell the district court not to make a determination about title. And that's your position too, I thought. If the district court, you're right, Your Honor, the United States, again, we're gratified that the United States argument is casting doubt on the merits of the claims, but again, where we sit here is the United States arguments in an appellate brief on intervention, we can't say what the U.S. is going to argue or not argue ultimately on the merits of the case. And so if we end up being aligned, great, we will avoid duplication in that briefing. If we're not aligned, then it's important that the district court have the perspective of the state of Newark to vote. I mean, your best case scenario is not in alignment with the United States because your best case scenario would be if the district court were required to decide title and decided it in your favor, which obviously the United States isn't making that argument. That would be the fine outcome, Your Honor. You're right, it might not be the way that it is. You might also be in alignment if the district court doesn't reach that issue and still rules against MHA Nation, then you might be in alignment. But really, the reason you want to be in is to which the United States is opposed to. I'm not saying that necessarily means you do or don't get intervention. I'm just saying that's really what you want to do is to be able to make an argument about who's entitled to the proceeds that's in opposition to the position of the United States. Yes, Your Honor. We want to oppose the position of the MHA Nation that it is entitled to, that it should be denied an award. If there's a denial of the award, that's a satisfactory outcome for this case. So what are the... I mean, one thing that I'm conscious of is what would be the implications of reversing and directing intervention be allowed for Indian law and trust obligations generally. It seems that almost every claim of holding lands in title for Native tribes involves a lot of complicated questions of property. And so why isn't the implication of your position, every time there's some dispute in court about the Department of Interior's trust obligations, every single one of those cases would enable not just states, but private property owners to come in and say, stop right there. Predicate issue to the asserted trust obligation is whether the land is appropriately held in trust in the first place. And we don't have a rash of cases like that. So I wonder if there's any limiting principle or what you're... I appreciate your honest concern. I don't think that reversal of intervention would open the floodgates to a bunch of claims challenging trust title. Again, I think this is a very unusual posture given this case. The MHA Nation didn't just bring this case against a solicitor, Interior solicitor's M opinion. They brought it because they were satisfied with long period of time that they had not been deemed to be owners and that the United States had not done things that they viewed consistent with ownership, including gathering all the revenues from mineral production and paying it over to the tribe. So this case was initiated by a tribe. But many cases questioning Interior's fulfillment of its trust duties would be I'm not sure I see any meaningful distinction there between my hypothesized rash of cases and this case. Your Honor, I think in the various cases that are cited in the briefs, there's no question about there being a trust obligation or trust title. It's really a question like the accounting cases that are cited. It's just a matter of what's the amount. There's not an occasion to come in and dispute the actual... But if we were to rule in your favor, that would put the idea out and maybe we would see a lot of cases like that. I don't know that I would agree with that, Your Honor. I think that given the... I think the fact we have not seen those cases is evidence that... And again, the Quiet Title Act is out there. The Indian land exemption is out there. The reasons for that remain upheld as regardless of the reversal of intervention here. How is that an assurance, the assurance that I'm looking for that this isn't going to open a floodgate? Well, again, under the Quiet Title Act, the outcome of a Quiet Title Act action is that... Sorry, a sovereign immunity on Quiet Title Act grounds is not an adjudication that the tribe actually owns the land, right? It's that it remains undecided. And so the state can assert or insert its arguments. The tribe can assert its arguments. But in a case like this, which is, again, unusual, tribes don't typically come in and argue that mandamus is required to dispense of revenues from lands in which title is contested. The United States has the option to bring a Quiet Title Action if they really wanted to resolve this issue. But we don't see it because this issue of riverbed ownership is very narrow. It implicates a few states and several of the instances have already been adjudicated here. So, again, there is quite a bit of land in the Fort Berthold Reservation. What we're talking about is the narrow historical riverbed that involves equal footing and state title and ownership. So it's a pretty narrow question. And these cases involving accounting and trust title do not involve typically the riverbed issue. It involves just broader issues of how the United States is discharging its trust obligation. So am I right that North Dakota doesn't really have any stake in Trump III? It's really when you get to the claim on the part of the nation that it believes that it's entitled to have Interior collect and pay funds to it. That's where the rubber hits the road from your perspective. Yes, Your Honor. I think the United States has characterized Count III as a setup for Count IV. And I think Judge Randolph also kind of put his finger on it. It would be a question of an advisory opinion in moving that way and also whether an accounting is the correct means in order to obtain the information that the tribe wants to obtain. The state may have some abuse on those issues. But yes, I mean, ultimately, you're right, Your Honor. This is regarding the disposition of the revenues, which is real property that the state should be heard on before it's decided. You mentioned that there were settlement negotiations, and I'm not sure I heard you correctly. You know, it seems to me that in this situation, the responsible thing for the United States to do is initiate a quiet title action, as they did in the United States versus Montana, to get this thing settled. And I don't think there was a quiet title problem when the tribe sued, because the United States had waived immunity. And there was no claim that by the United States that this was Indian trust land. So the tribe can sue the United States to quiet title, but the state can't. And that under this situation, and that raises, I think, equal protection problems for me anyway, that the state is being barred from establishing its title to this property, whereas the tribe is not. So in settlement negotiations, has the United States indicated at all that it's prepared to bring a quiet title action against North Dakota, as it did in the Montana case? Your Honor, the only time the United States and North Dakota Council have discussed this, the United States declined to do that at this time. We're not privy, the state is not privy to any settlement negotiations, because we're not a party to the case anymore. Who is it that supposedly the United States claims owns title to the riverbed? Is it the tribe, or is it the United States? The United States, under its most recent solicitor's opinion, states that the United States owns title in trust for the MH&E. So it's the tribe that owns the riverbed, according to the United States? According to the most recent solicitor's opinion, yes. Okay, so that raises a question in my mind, another question, because I think it's the tribe or the United States said, well, you can, the state can bring a Tucker Act claim for takings. But if it's the tribe that owns the riverbed, then, and not the United States, I don't see how you can bring a takings action against the United States. Your Honor, I mean, I think it's outside the scope of today. I share your concerns. The tribe has filed a Tucker Act action that's pending until this district court litigation is filed. The United States has indicated that the state could file a Tucker Act case. I mean, of course, the predicate for a takings claim is you have to suspender any right to the property. All you'd be seeking is just compensation for that taking. So any future production would not be within the ambit of the state. So there's a lot of downsides to that as a viable source of relief. But regarding settlement negotiations, I have to ask, Your Honor, to ask counsel for for the attellies about what's been discussed. So I hear you to be saying that North Dakota is entitled to intervene to contest the shared assumption between Interior and the nation that Interior holds title to the land's interest for the nation. And that that is not a claim barred by the Title Act. It's not a claim at all. It's simply it's not asking for title to be decided in the state's favor. It's asking that it not be decided in the current party's favor. Yes, Your Honor, and Rule 24 states a claim for defense, right? And Interior is arguing that this suit is only, and the tribe and the nation are arguing this is only a case about trust responsibilities. And you're saying, well, no, the predicate, the assumption that's operating on is an assumption about title. So that's really what's at issue in the action. What's your best case, intervention case, that party can come in and, as your opponents would put it, enlarge the action in that way? Well, Your Honor, I would just quibble with predicate because I don't think that we're enlarging the action. I know you would, but tell me a best case in terms of intervention to say, no, no, there's an assumption the existing parties share that I want to dispute. Well, Your Honor, I think it's a, in terms of the, you know, having a shared assumption, I'd have to go back to the briefing. I don't know that that's, I think the relevant question is just that the MNK nation needs to demonstrate all elements of its case, and that it can't demonstrate it by a dissent with the other party. So it has to prove, and it's not going to be an Administrative Procedure Act claim. It's unlike the one against the, against the Georgiani M opinion, which has now been rescinded. It's an evidentiary claim. It's a legal, it's evidentiary. But their current case is limited to an Administrative Procedure Act. I don't believe that's correct, Your Honor. I believe that they're seeking a main, they're seeking an APA compel, as well as a mandamus relief, as well as an accounting, which is full of questions about facts and evidence. So I think that there could be a trial, not necessarily a summary judgment motions on those other complaints. If, if this court were to deny intervention, or say that the appropriate course is to deny intervention, but without prejudice, should an issue of, you know, a finding that the, that the tribe is entitled to the revenues, the, in the picture, what would be wrong with that? In other words, if, if the district court, fully cognizant of the points that you're making, is already planning not to, in this case, order any payment of the revenues, the royalties from the, from the existing leases that the state issued, why wouldn't it be fine to have North Dakota be out of the case, and only if and when that, that becomes an issue, allow North Dakota to participate? Well, Your Honor, for future casting and the district court rules against the NHA Nation, I think the North Dakota would be fine, right, not being in the case. Problem is we have no sense of where the case is going to go, what the arguments are going to be made, what arguments are going to be made. But I'm saying if there were some provision that were that Rubicon to be crossed, I mean, you make a very persuasive case, but that's not going to happen. Because, you know, we don't have precedent showing, in a case like this one, that the United, the Department of Interior ordering the payment of royalties collected by one party, and somehow getting them and sending them to the Nation. And so the very fact that you have a strong argument, you know, that that can't happen in this case, it seems to me in some ways is superior to your intervention. And I'm just trying to think through procedurally why that couldn't be protected in a narrower way. And in a sense, this goes back to my concern about the implications of saying anytime the Department of Interior is interacting with a federally recognized tribe, and there's some, some, you know, often just executive determination of title, or we can invite everybody who ever thought that was their land just to gum up the works. And so I'm thinking about those lines, and I'm looking for your help. Yeah, Your Honor, I mean, on the, again, I don't think this is a floodgates issue because we've been involving any issue where there's, like, reported trust title, and the issue is what's the accounting or the extent of those trust responsibilities. There's already, right, there's already alignment between the plaintiff, which would be the tribe, and the defendant, which would be the United States. And so intervention or bringing another party in, right, would be, would be, I mean, that would be introducing new issues, right? That seems like a good case, though. I'm not, I'm not sure I'm following exactly why that isn't this case. Well, this case was brought by, again, this case was brought by Imagination for a determination of ownership of title, as well as all of the fruits of getting that, of getting that title determination. And so they've gotten a ministerial repudiation by the, by the, and everybody agrees it's ministerial, and it doesn't decide anybody's title legally. They got a ministerial repudiation by the Bureau of Indian Affairs. Now they want a, they want, they want, they want the money. But if we could assume, just dial back and assume the Giordani opinion never issued, were before that time, and the tribe, as you say, has long been, the nation has long been frustrated about Interior's stewardship of, of these rights. And imagine at that time that a lawsuit encompassing what are, in effect, counts three and four of this case is brought. In that case, does North Dakota have an entitlement to intervene? Yes, Your Honor. I mean, in, in, in the case where there is an agreement, again, that's, that's really what this case is. Via the MHNA Nation in the United States, the MHNA Nation's view is that the United States was not, did not record a trust title and did not view it as a land, and they wanted to... But imagine that the United States, in that prior case, had, had recorded a trust title. And the nation is saying, yeah, but that's not enough. We want you to actually go forward and, and take the actions that would flow from that to doing accounting for us. And when you realize that there's all this value flowing from, from these rights, make sure that that's collected and invested and kept for us. Yeah, well, I, I think, yes. I mean, I think we would have, we would have, we would have grounds to intervene in that case because, again, it's, it's seeking... Well, it's a zero-sum game. I mean, you... A zero-sum game. You want the same revenues that...  ...that the nation would be asking for. Correct. Isn't that what's at stake in count four for you? Yes, Your Honor. Again, so the land and the money they're finding, right, so it's just because you, it may not be ratioed to Connor, it may be able to file another action somewhere. That, that, that's what the news case says. So that, that's not pertinent to whether you can intervene in this case. Well, the other thing I say, Judge Pillard, is if, if the act of granting the intervention to, to the state of North Dakota doesn't really change the contours of the case, that's, that's our position. We're not changing the contours of the case by, by coming in. We're seeking to participate as a party. We want to have a briefing. We want to be able to put our arguments in front of the district court. The district court can do what the district court would like. The district court can issue a ruling, decide to proceed to trial, or submit a judgment, or however it wants to proceed. The district court can moot claims. We've already had that happen in the course of litigation to date. Something can happen that causes the district court to say X claim is moot, and that could have implications for whether you can intervene. It definitely could. I mean, the district court could do something that would get rid of count four. We don't know yet, but if the district court does that, then the extent that your intervention is predicated on count four, that would be gone, and you wouldn't be allowed to intervene based on count four. Then we'd be left with the question of whether count three alone would be enough for you to intervene, and that would be a different question. Yes, Your Honor. Do you disagree that things could happen that could affect whether you're entitled to intervene going forward? Yes, Your Honor. Litigation's unpredictable, and so we don't, we just want to see it at the table so that we can indicate our, our interest to the court's consideration, and the court can take whatever action it wants, and if the court takes an action adverse to the you want to have an opportunity to appeal that as a party. You may have a seat at the table, and then your entitlement to have a seat at the table could change based on what the district court does. Yes, Your Honor. You may have already explained this, but the shipment declaration talks about royalty payments, and that they haven't been paid. Like, what's the current status? I guess maybe you directed us to ask Interior about that. The current status is you're aware of royalty payments that have been withheld from the lessees that are in escrow with the state and or elsewhere. Yeah, I, the, and I'll, I'll admit, Your Honor, I don't have a, a dollar for dollar account. That's fine. My understanding is the United States held in, held directly something in the nature of 13, 14 million dollars that is what the United States calls drainage. That is production from tribal issued leases for upland areas that many have involved minerals extracted from riverbed, and so there was a stance delivered in the district court that was rescinded at the remaining party's request. The United States has paid over those revenues. I agree with you. So those revenues, whatever the United States has held from riverbed revenues, have been paid now. And is that something you're seeking to unravel? Oh, we would, yeah, I mean, again, just be dependent. Those really weren't riverbed revenues that should have flowed to the state, and yes, that would be monies that the tribe would not be. Is that a lien, under 2024-10? That may constitute a lien, Your Honor, yes, but there's, there's no, the state has not filed a lien. Our position is that if those really are riverbed revenues in the United States, it says they're not sure. They, they held them back as a, to be safe, that they, and paid them out once the court didn't require them to hold them anymore. And what about the revenues that the state? Yeah, so there's a lot more money, Your Honor, that is being basically held in suspension, and I think there are various mechanisms for that. Some of those are being held directly by the producers in suspension accounts. Others are being held by third-party charities or banks and escrows or the like. Arranged by the state? Yeah, I believe the state may have had some involvement in setting those up, but they are principally, I don't believe the monies are within state custody right now. I believe they are within the power of a trustee or the producers themselves until the ownership issue is resolved. Let me make sure my colleagues don't have additional questions for you this time. Thank you. We'll give you a little time for questions. Thank you, Your Honor. I want to start with the point whether the current case can go forward on the premise that the United States holds the bed in trust for the nation. And to clarify, the United States holds the bed, holds the title for the benefit of the nation. That's the way it was public lands that were reserved and the fee was never conveyed. Actions are brought against the United States all the time, alleging that there has been some mismanagement, breach of trust with respect to real property or other property held by the United States as to title. It simply assumes the ownership and then you get down to the fact of whether there was mismanagement that gives rise to a claim. And the question of litigating title is a big deal. It requires a lot of factual inquiry. Experts are involved typically. So, can I just take you to the text of Rule 24? So, one of the counts in the case right now, still in the case, is a claim by the nation that they're owed royalties from minerals. And if that's, I mean, you don't dispute that that's property that's a subject of the action. That is, well, that's property that at a high level of generality is the subject of the action. But what happens here is that the state restricted the arguments that it wished to make. It has been seeking intervention from the outset to litigate title. Right. So, you agree that the royalties are property that's a subject of the action. We argue that it's not subject to the action because of the limitation of their arguments. How is it not? How is it not? MHA nation has a complaint that seeks these royalty payments. That's correct. And so, how is it a party can't argue its way out of something being a subject of the action? It's either a subject of the action or it's not. At least, I don't understand how somebody that's not even in the case, in your perspective, can determine what's the subject of the action. The MHA nation asked for royalties for DOI to send over money. That money is property that's a subject of the action. And if that's true, then why isn't the state claiming an interest relating to that property? And if they are, then why don't they come right within Rule 24? Your Honor, if we posited that because they limited their arguments, it's not the subject of the action, but taking your premise that it is the subject of the action, I think their limitation of what they wish to argue is nonetheless relevant because not only it goes beyond what the parties wish to argue, but they actually can't litigate title in this case. Well, put aside the quiet title just for one second. And I'll get to that. Okay. But under Rule 24, I want you to fight the premise if you think it can be fought. What I don't understand is how it can be fought because the royalties are property that's a subject of the action, I believe. If that's true, if that's wrong, tell me if it's wrong, but I don't understand how that's wrong. I think it's a too high level of generality given the specific circumstances of this case. Then what is the property that's a subject? How are the royalties not a subject of the action? Because the state has defined its interest as to prove its title or to disprove the nation's title in this action. It is not suggested that any other... Who cares what the state... You don't even think the state should be a party, right? So if the state's not even a party, how are they defining whether something's property that's the subject of the action? That's defined by the action. Your Honor, the state come in as a supplemental motion to intervene and said, we want to oppose three and four, count three and four, but they didn't. They very clearly said they wanted to litigate title, but that determines everything. Nothing else matters. But I think what that confuses in my mind is the rule says claims and interest relating to the property that's the subject of the action. It doesn't say claims and interest that's the subject of the action. So the first question is, are they claiming an interest related to property that's the subject of the action? And if the property that's the subject of the action is the royalties, they are claiming an interest related to the royalties. They may not be claiming an interest that's the subject of the action because the interest they're claiming and the way you're looking at the action has been put to the side. But they are claiming an interest related to property that's the subject of the action. If the property that's the subject of the action is the royalty. That's one way to look at it, Your Honor. What's the other way to look at it? Another way to look at it is they've limited, they have limited the level of generality. But they've only limited the level of generality in a way that goes to whether they're claiming an interest. But the first question is, are they claiming an interest related to property that's the subject of the action? It seems to me that the royalties are property that's the subject of the action because MHA Nation is asking for them. And then the question becomes, well, if that's true, why isn't the state claiming an interest related to that property? They are because they want the same property. They think the property shouldn't go, that property, the royalties shouldn't go to MHA Nation, that it should go to the state. That seems like a classic case for intervention. Well, Your Honor, I can't say that that is an impermissible, unreasonable view, but I believe intervention was nonetheless properly denied because the district court said that adjudicating this case would not, as a practical matter, impair their interest. I'm sure there's a lot of obstacles to this, but just as a conceptual matter, if the issue about the existing royalties that were paid under leases, looking backward, if it were an implication of the Nation's claims that the very fact that those are in escrow accounts or as yet unpaid and that North Dakota is claiming an interest in them is as a result of mismanagement by Interior. If Interior had been on the ball for the Nation's interests, those leases never would have been granted and the royalties would not be caught up in some account. At least conceptually, one can see, well, Interior, whether it is ever able to collect that money that the state has its eye on, Interior has to pay from somewhere. In other words, you're not suggesting, I don't take it, that the reason that North Dakota doesn't have an interest in the property that's at issue is because Interior could pay damages in the amount of the revenues and resolve the claim. No, that's really not our argument. Even conceptually. I mean, I understand your primary argument is that the court couldn't go there. Had North Dakota filed a supplemental motion to intervene that says there are lots of reasons why accounts three and four, MHA Nation should not be afforded relief, even assuming title, I'm not sure that we would have opposed intervention. We still have arguments that this case can proceed without impairing their interest. But the real sticking point as to the opposition to intervention is the clarity with which the state said we want to intervene to litigate title, which we took as an effort to end run sovereign immunity. The state repeatedly says we're not filing a claim, we're just filing a defense. You don't have a case that says we can't do this. No, we don't have a case because this is an extremely unusual situation. But the import of Block and Patchak are that if you challenge the United States claim to title, it is barred by sovereign immunity. I'm not aware of any situation in which sovereign immunity has been asserted unless the party is seeking relief against the government. Well, your honor, they effectively are. I don't think they are because they can't get any relief against the government in this case. They do want to have an answer to an argument about title that's in opposition to the views of the government. That's definitely true. But they're not, well, we don't know that, I think. It depends on how the district court decides to proceed with the case. But even regardless of whether they, if they can't get it, all the more reason there's not a sovereign immunity objection. Because then they're not seeking relief against the government in any form. But I guess my question is, if all they're asking for is the district court to address an argument, the upshot of which wouldn't result in any relief against the United States. It would mean that the United States would win in this case, if the states were right. It would mean the United States would win because the nation would lose. So I'm not aware of any situation in which sovereign immunity has successfully been asserted in order to prevent an argument from being made when the party against whom sovereign immunity would be asserted isn't seeking any relief against the sovereign. Your Honor, I can't cite you a case because this is a very unusual situation where you have two parties that agree on title and a third party tries to come in and say, well, we don't agree. Again, because that is commandeering the entire case of the plaintiffs. If you can't cite a case, and I'm not surprised you can't cite a case because it is a unique situation. I don't think there's a case on either side that states couldn't cite a case that supported either in these circumstances. So then just as a matter of theory or as a matter of first principles, why is it that sovereign immunity can be asserted when what's at stake is not relief against the sovereign? Usually sovereign immunity is asserted because somebody's bringing a case against the sovereign. It's a claim asserted against the sovereign. There's relief sought against the sovereign. Here, the government is asserting sovereign immunity. That's what you're doing in your brief. But I'm not aware of a situation or a theoretical foundation for asserting sovereign immunity where there's no relief being sought against the government. And in fact, the argument that would be asserted would actually help the government in the case. But if title is not an issue, if what they are asking for is not effectively a claim against the United States, then why go through what could be multi-year proceedings to come up with some decision by the district court as to whether it thinks who has the better argument about title? This case can be resolved when there are grounds. But if I'm a party who thinks that the money that's being asked for by somebody else should go to me, it doesn't give me that much solace to know that, well, there's an X percent likelihood that that party who's seeking the money that I think is owed to me is never going to go because there's all kinds of other ways in which the court can rule against the party that's seeking the money. I'd still want to be in the case to make sure. And again, Your Honor, had the supplemental motion to intervene said we wish to argue broadly against counts three and four. But they think this is their best argument. Excuse me, can I finish? They think this is their best argument. The state just thinks, I don't want the money to go to another party that's asking for it. I think the money should go to me. Here's my best argument as to why the money should go to me. It's because the money is actually owed to me. And it's true, that's what they would like resolution of. But the fundamental point is there's a pot of money that's in the case that the party that brought the case wants access to. And this is another party who says, wait a minute, I don't want that money to go to that other party. I want the money to come to me. Here's my best argument as to why that is. My best argument is I'm the one who's actually entitled to it, not the other party. Well, Your Honor, I would say that the district court believed there was a path to resolve these issues. We acknowledge that any relief would have to take into account the fact that there remains an unadjudicated claim to title. So in this case, rather than taking this action and inserting the title question into it, it would be better to at least allow the case to proceed to see if the district court considers at some point, oh, I thought I could do it, but it turns out I really can't do it. And we would concede that under our of the other arguments that can be made is that we don't think the district court could order the United States to collect money. It could possibly order us, try to order us to take action to collect the money. We don't think it can do that because we would have to file a lawsuit. And in that lawsuit, the state could assert its interest, again, not to title, but to say, no, you can't let that. It needs to stay here until title is adjudicated or some other argument. But there are many paths that are preferable, more protective of the interests of the parties, the judicial economy, than stopping this case for an adjudication of title. But it may never happen. That's the thing I'm not understanding is you're right. There's many paths that the court could take, the district court could take. And many of those paths would mean that the issue that the state wants resolved wouldn't get resolved. That's true. That could happen. But right now, the state doesn't know. If the district court did something tomorrow in the litigation that would mean that the title issue is just gone, that would probably change the state's entitlement to intervene. But right now, why is the default assumption that we wait until we know that that issue is in the case before we allow the state to intervene? I thought the way we usually do things... I thought the way we usually do things is that we allow the party to intervene unless and until it becomes clear that the interest that the party is seeking to improve by intervening is no longer in the case. Not the other way. We wait to allow them to intervene until we make sure that their interest is in the case. Because right now, they don't know. Your Honor, we believe that the state made a choice in its supplemental motion to intervene. And had it... One reason we don't know how these issues will play out is because it restricted its involvement in the case. And that's what the party is focused on. Had the state said it wanted to argue more broadly, then in connection with the motion to intervene, they could have been fleshed out. Or as I said... What are you referring to when you say they restricted their interest in the case? In the supplemental motion to intervene, the argument was they wanted to intervene to get... to litigate title. And we believe that comes through in the opening brief as well. It's all about title. That's why they want in the case. They, we believe, are exploring whether they can use their framework of a defense to a claim as something that would allow title to be adjudicated without running into the sovereign invasive deal. But isn't that exactly what the Supreme Court blessed in Patchak, where a party's coming in and saying, wait a minute, the premise here of this development of this gaming facility is that there's title. And I'm going to argue that there isn't, that counts for purposes of IGGRA. And why couldn't we understand the state's motion and briefing to be saying, I just want to kick out the kickstand on which the nation's claims rest. And yes, that is beneficial to my underlying belief that I have title, but that doesn't have to be litigated in this case for me, the state, to have that interest and assert it here. Your Honor, as I understand Patchak, what was allowed to go forward were claims contesting taking title into that land of interest apart from title. Well, okay. So it's the premise though, taking land of interest that it couldn't be done and used for gaming because it wasn't of the right, you know, time. So why isn't this parallel in terms of the Quiet Title Act, where it's not seeking to establish title? What I'm contesting, a premise in the action that the plaintiff is seeking. What we would see as a parallel to Patchak is if the state wanted to come in to bolster or make, if for some reason we don't proceed to make the arguments we suggest we're going to make in the district court about the inability of the district court to collect revenues from parties who aren't before the court, the inability of the court to order the United States to file actions against third parties that aren't before the court. So that's the analog we see to Patchak, that those arguments would be permissible. And perhaps intervention is appropriate. Has that been made clear that in the district court we could have argued about whether the United States was an adequate representative or not for those points? Or as I said, had title been taken off the table, it's likely the United States would never even have opposed intervention. I think the United States would be well advised to consent to intervention here. I don't understand at all how the presence of North Dakota with their arguments, which parallel yours, in any way, shape, or form damages the position of the United States. I just do not understand what the basis is for your opposition. Your Honor, again, if title can be taken off the table, I believe that the United States would not oppose intervention. Because with the other arguments, there is no difficulty. I expect that those issues will be addressed through a motion to dismiss of some sort. And a brief submitted by North Dakota on those issues would not be burdensome for the parties or the court. However, litigating title would be burdensome because it can't be adjudicated. And it's not necessary to establish that when there's no disagreement between- And the state says it's not going to seek a determination of title. All it's seeking is a determination that the tribe is not entitled to the mineral royalties. But I understand that it intends to make the kind of presentation. You have to get into the historical record, which typically involves experts. Sometimes these are decided on summary judgment after a long period of discovery. Sometimes they go to trial. I understand the state could be arguing, well, we can have state on a vote, but I thought the state definitely is arguing that the tribe is not entitled. But I thought the state's argument is the reason the tribe is not entitled is because we are, because we do have title. So the state's argument is the reason it wants to come in. As I understood, it was in order to show that the state is entitled to it. And you'd be free, and before the district court takes, to make all the arguments you're just making now about why that issue doesn't need to be resolved. You could tell the district court, and I'm sure you have a will, that there's all kinds of reasons this litigation can go forward and can be resolved against, in favor of the United States and against the nation without having to address the underlying issue of who's entitled to the, who has the, who has ownership over the mineral estate and the royalty. Right? That's a lot. You can make the arguments that the nation can't possibly get the proceeds because that would involve the interest of third parties who are not in court. So the court wouldn't be allowed to get that kind of relief. The district court could decide, okay, well, then I'm taking that off the table for that reason without having anything to do with who's got the underlying ownership interest. All that could happen. It could happen. Your Honor, we're concerned that if there were a blanket reversal, that would mean that title is an issue in the case and North Dakota would then proceed to want to litigate title, whether they're saying that they want to claim it or that the nation hasn't proved it. That is the problem. So the Quiet Title Act, whether the Quiet Title Act bars that proceeding must be decided either by this court or we think a remand for the district court to decide that question. Yeah, it definitely has to be decided because you've asserted sovereign immunity and somebody has to decide whether your assertion of sovereign immunity is well taken. Either us or the district court on remand, if it goes to that. So, I mean, if this court were to say, well, we just don't agree with the articulated basis of the district court, that title is no longer a subject of the action. And we recognize the whole Illinois bail principle is a prudential constraint and it's to facilitate, as I said, the competing interests of the outside party and judicial efficiency without commandeering the action. The district court could also say that I'm not going to decide the accounting issue and I'm not going to decide count four with respect to royalties because of predicate in both of those counts is ownership of the mineral bed and this is not a proper action any longer for determination of that issue. So, therefore, I dismiss it. Now, if that's the argument that persuades the district court and one that, you know, North Dakota basically makes, then I don't see how the United States is in any way, shape or form, impaired by that. You win on both counts, counts three and counts four. Well, I don't disagree with you, Your Honor, as to that issue. But we have understood again, North Dakota to want to argue title primarily. At this point, have they, I don't know that they've forfeited the right to raise other issues. There is a burden under 24C to apprise the district court of the basis for your intervention. And, you know, had North Dakota explained that we want broader intervention, then the district court could have dealt with it and parsed out the issues. But it was so targeted to title, I think the district court understandably focused on that. So, we think there's a good forfeiture argument. Now, whether they could go back and file a motion to intervene and broaden it, I don't know. So, if the district court thought that title is not in the case, and then North Dakota intervenes and makes a bunch of arguments about title, then the district court presumably will say, interesting, let's just hypothesize that they're allowed to intervene, debate a bunch of arguments about title. As I already said, I'm not worried about title in this case because I'm ready to resolve the case on grounds having nothing to do with title. Then kind of no harm, no foul, right? Because nothing would have happened that causes the United States any heartburn. Except they can't make those arguments without a Quiet Title Act determination. So, that's... They can't make the arguments? I'm not sure about that. This gets back to the question of where you get to assert sovereign immunity. Because all the Quiet Title Act does is waive sovereign immunity. So, the Quiet, if we just take, we have to ask a predicate question, which is whether this is a, whether there's a basis for asserting sovereign immunity in the first place here. And because you have to be able to assert sovereign immunity, otherwise, the Quiet Title Act doesn't even make a claim. And so, I'm still stuck on how is it that the government asserts sovereign immunity as against an argument, as opposed to as against a claim for relief against the government? So, my formulation is just slightly different because when I say we have to adjudicate the waiver of sovereign immunity, the question is whether the particular procedural maneuver here is a challenge to United States' title, that then you have to get a waiver of sovereign immunity. I mean, yeah, I guess you could split that question out to the next question, but it's Quiet Title Act law that you would have to look at to see is this within the broad scope of interpreting 2409A, that this is a challenge to the United States' claim to title. You mentioned Illinois Bell, and I know you've relied on that in your Rule 24 arguments that the North Dakota is trying to impermissibly enlarge the scope of the existing action. That case, as you know, arose in the context of a petition from an administrative agency, and I wonder, do you have arguments or cases that apply that same principle from district court? I could not find it in this court's precedent. My review indicated that this court applies that rule in the context of petitions for review, but the district court cites the Seminole Nation case, and I believe there are other district court decisions, CDC decisions, that have looked to Illinois Bell for guidance. But the Seminole Nation case cited by the district court is one of them. And while the procedural context is not identical, I think Illinois Bell is concerned about circumventing other restrictions on litigation. And so the broad principle of the balance of Rule 24A applies, and the district court here has looked to it that way. But no, I'm not aware of any case by this court applying Illinois Bell outside of the petition for review context. Can you tell us what you understand about the status of the disputed royalties, including since 2020? Right. So, Your Honor, the royalties have to be separated out from those that are held by the United States pursuant to the leases it has approved, and royalties that are being held by producers either in their own state or in their own county. The Department of the Interior has responsibilities under the Indian Mineral Development Act, Indian Mineral Leasing Act, to hold those monies and transfer them to the tribe. What happened here, the $13 million that's been talked about, the federally approved leases only grant authority to extract oil and gas up to the border of the historic riverbed. When the district court entered an order that any— Not in the disputed land. Correct. But because there was a possibility that a wellbore could be close to the riverbed, even though not extending into the riverbed, Interior had some concern not—wishing not to of the district court's order that they should hold back some amount of money that maybe is attributable from a wellbore pulling some oil from under the historical riverbed. That's been held back and not paid. And when you talk— That has now been paid. Once the—that injunction only lasted until Count 1 was adjudicated. Once Count 1 was dismissed as moot, that injunction was terminated. And at that point, Interior did release those monies that might have come from under the riverbed but shouldn't have come from under the riverbed. The biggest pot of money is the—I think it's over $100 million. I'm forgetting the details. That oil and gas producers have put aside because it is from—they think it is attributable to the minerals underlying the riverbed. But the part of the Interior has no better information, as I understand it, about those monies than the state does. I mean, there's no administrative oversight, no statute requiring them to report to Interior. And— Because they're not related to the leases that you— Correct. —that the Department of Grants— Correct. So, you know, we haven't discussed—we've been discussing in our brief precisely how the accounting claim would go forward with respect to monies that we have never held. So that's an issue. We didn't—it wasn't necessary to present it because our argument is, however, if we do or don't do it, it can't hurt North Dakota. So then we focused on account for. And these licenses and royalties, are they all during the brief period of the Georgetownian opinion, or did some of them proceed ahead? I believe—I don't believe this is limited. My understanding is that since then, they are still putting the revenues aside. But, I mean, how did it happen, or did it happen, that even before the Georgetownian opinion was issued, that the state was licensing extraction? Because it just took a position. I don't know when—I don't know when the time period for these monies that the soil and gas producers are putting aside started, because, again, we don't control that. So I don't know how long—how far back that goes. My understanding is it's continuing to the present, that they're putting aside the monies they think are attributable to the riverbed. And it's not—you said you don't control that. But if you're holding these rights and trust for the nation, then don't you control that? And that was the position before the Georgetownian opinion. Well, that may be part of their claim of mismanagement that would have to be litigated. But there's no statute that requires that. That's the United States position, or regulations that require that. But the interior duty is when the tribe asks interior to approve a lease for a particular area, then interior approves or disapproves the lease. And that's the scope within which interior has been operated. Okay. Let me make sure my colleagues don't have additional questions for you. Thank you, Ms. Bragg. We'll hear from the nation now, Mr. Ferdon. Okay. Please report. My name is Tim Ferdon. I represent the affiliate here in the Mandan, Hidatsa, and Arikara Nation. This court should affirm that this report's decision that North Dakota is not a proper party through intervention in the APA Act impending below. Block v. North Dakota holds that Congress intended that the Quiet Title Act provide the exclusive means by which an adverse claimant could challenge the United States title for real property. Clearly, under the Indian land exception to that waiver of sovereignty, the Quiet Title Act bars North Dakota from initiating an APA case, a suit to contest where the United States holds title, to the Missouri River Rest Trustee for the MHA Nation. It makes no difference here that North Dakota seeks to intervene as a defendant, a party defendant, and assert this claim as a defense. North Dakota still seeks to use this APA suit as a vehicle to dispute the United States' title to the River Rest. This it cannot do. Why not? Because I think everything you said, I don't disagree with. Descriptively, that seems right to me. But what underlies that is, what underlies the limitation on trying to do that is sovereign immunity. And why is it a problem of sovereign immunity to come in on the side of the United States to raise an argument when you're not seeking any relief against the United States? It'd be one thing if the state said, I want to intervene against the United States, putatively on the same side as the nation, because I want to assert an affirmative claim to the proceeds. That I see, because then you're seeking relief against the United States. But here, the state isn't doing that. And why is what they're doing bound up in sovereign immunity when they're not seeking relief against the United States, they're not filing a claim against the United States? Those are the classic situations in which you see sovereign immunity. I would concur that the state's pleading here is quite artful, right? But Block says that it would, defy description or something like that, to allow artful pleading to allow an end run around the Quiet Title Act. The government is sovereignly immune. It has waived its sovereign immunity by Congress has waived that sovereign immunity by passing the Quiet Title Act, except the Indian lands exception, which restores immunity. So I think that- The act says that the United States may be named as a defendant, but not with respect to Indian trust or restricted lands. Who named the United States as a defendant here? The Indian Nation by file. Right. The state of North Dakota didn't name the United States as a defendant. So I don't even see how the Quiet Title Act comes into play, because this is your case. And they're coming in and they're not the ones that are seeking any kind of waiver of immunity. As a matter of fact, as my colleague points out, they're coming in on the United States as a defendant again. The state of North Dakota's position in this case is that the MHA Nation does not own the riverbed, and therefore shouldn't get the royalties. But they're not a disinterested third-party landowner who doesn't want a casino next to them like in Patchett. They are engaged in a zero-sum game. The reason that the MHA Nation shouldn't receive those royalties is because their position as the state of North Dakota owns that. And that is a traitor of the court. That's what brings this case into Indian lands exceptions to the Quiet Title Act. No, but again, I don't disagree with anything you said in your description, but I guess I still don't understand. The Quiet Title Act can't have anything to do with this case unless sovereign immunity has something to do with this case, because all the Quiet Title Act is is a waiver of sovereign immunity. So there has to be some reason as a matter of sovereign immunity law that the state can't come in for the reasons it wants to come in. And that's what I'm not understanding. Yeah, and maybe we're talking... Let me try my thoughts on this. The federal government is immune. It has waived its immunity to allow quiet title actions, except, obviously, right, Indian lands are at issue. In that situation, it provides another path to remedy, or to analyze another path for the North Dakota to test its claim of... No, but my point is an antecedent one. The United States, as a default matter, is immune. Correct, correct, correct. But we've never thought of immunity as immunity based against an argument made by a party that's siding with the United States. That's what I don't understand. The state is coming in on the same side, meaning against you, to assert an argument. And I've never heard of a case where the United States successfully asserts sovereign immunity to say, I'm asserting sovereign immunity to stop this putative party from coming in to make an argument against me, even though they're not filing a claim against me, even though they're not seeking relief against me, even though they're making an argument that would actually allow me to win this case. It is quite unfulfilling. I concur with you. But I do think that... I would say that they don't agree with the United States on the issue of title. The United States were... I stipulate to that. That is definitely true that they disagree with the United States on the issue of title. What I don't understand is what that has to do with sovereign immunity if they're not using that argument as a basis to seek a claim against the United States, to seek relief against the United States. We've never thought about sovereign immunity, meaning the government... Sovereign immunity doesn't mean the government doesn't have to answer a letter that's sent to an agency, right? I don't think you can assert sovereign immunity against a consumer inquiry. And this just seems like there's no claim against the United States. There's no relief against the United States. There's an argument. It may be that... I mean, I don't know if this is right and the Chief can speak for himself, but one of the questions when we consider immunity is, is the immunity only immunity from ultimate relief or is it immunity from suit? And there are some immunities where we say, even engaging in the litigation on the issue, and that doesn't deal with the adverseness. It may be the heart of the Chief's question, but I'm interested in, you know, is there... Is it necessary part of the position you're taking that it has to be not just that the Indian land exception retains immunity from liability, but that it implies immunity from suit? I think it's implied immunity from suit, and I think the answer to this is in the careful and thorough scheme, as Block called it, of the Quiet Title Act. The issue here is the inability of North Dakota to test its claim of title in the D.C. District Court in an APA Act. The state of North Dakota is not without access to a federal courthouse to test its claim of title. Congress, again, in this careful and thorough remedial scheme of the Quiet Title Act, provided that where Indian lands are at issue, a party wanting to contest title may use the Tucker Act and bring suit for compensation in the court of federal claims. So even if they can't, even if they have an option to route, and I think there's questions about whether they do, but let's just suppose that they do. Okay. And even if I agree, I think it may well be an immunity from suit. There's already a suit as to which the government's not immune. You brought it. So what I don't understand is, we're past immunity from suit. The question is, is there an immunity from argument in a suit that can otherwise proceed? So that is a good question. It's a good question, right? I'm with you. I would say, so how do we answer it? I would suggest that what we do is we go through the text of the Quiet Title Act, and we look at Block and the Quiet Title Act, and what do they teach us? Block says no article of pleading. We have to treat these exceptions. Sovereign immunity is really important. We have to analyze it in a separation way, all of those sorts of things. And we look at this case, and we say that this case, and then the Hatch Act is part of this too, but you look at that landscape, and that the ruling, the way through the thicket, is to follow the Quiet Title Act. It says Indian land cases seeking title are arguments over title are exempt, and that the path, that actually the Quiet Title gives us, is that the Northwest path here is to file a claim. Let me step back and say this. Chief, you said a number of times that their position is they don't want to challenge ownership of the river, but they want the world because it's about money. That's right, and they should go seek that relief in the Court of Federal Claims, because Indian land and the United States' pesky responsibility, Congress recognized in the Quiet Title Act by exempting Indian lands. So let's just suppose that they can go from the Tucker Act, but pursue their own action in the Tucker Act. Let's just assume that. What they're faced with is a case that you brought. They want to be in that case, and do you think that immunity from suit under sovereign immunity means immunity from particular arguments in a suit? Is that the upshot? I think it kind of has to be the upshot. That may or may not be right, but I'm not aware of any support. I do think that in this case, and I would say that this North Dakota has chosen this path, which I think is foreclosed by the Quiet Title Act. Why have they chosen this path, and why they made a decision? They have made a decision, a pending decision, their existing decision, not to go to the Court of Federal Claims. Why? That's the clear path for them under the Quiet Title Act. Yeah, but why is that? Because they could go somewhere else, and then that other court, there's already one Tucker Act claim that's being held. I'm sorry. There's already one Tucker Act claim that's being suspended pending this resolution. You know all about that. Yes, right. But right now, the state is faced with a situation in which you brought a claim seeking money that the state thinks should go to the state. The state just wants to be in the case to make sure that it gets to argue, wait a minute, that money shouldn't go to the nation. It should go to us. They may or may not be right about that. That argument may or may not be resolved in the case, but all they're saying is the nation brought this argument. They're seeking money. I think the money should go to me. I just want to be in there so I can make my argument that I'm owed that money, not the nation. Unfortunately, Congress doesn't agree with that. Sovereign immunity is not about fairness, right? Sovereign immunity is about power and the government's waiver of power, and Congress did that through the Quiet Title Act, interpreted by the bloc. I'm going to repeat myself, but Article 3 is not enough. This is the sole method, and there is a mechanism available for them to go get the remedy and that would be right if you think sovereign immunity goes to arguments, and that's, I think, the baseline issue. Can I just clarify one item, which is I don't understand the nation to be making the argument that even aside from the Quiet Title Act, Rule 24 would bar intervention by the state. I agree. Okay. I just wanted to make sure that you and the government are definitely situated. Let me just ask you, in your view, if the district court granted all the relief that you've asked for in the case, what would the district court order be to Interior? What would it tell Interior to do? Well, the easy part first, right? It would give us an accounting of our mineral rights going back. Again, let me digress just to answer one of your earlier questions, Judge. The mineral royalties were collected by producers pursuant to leases granted by the North Dakota before Zorjani. That leasing and collection by the state of the tribe's property goes back to the beginning of the Bakken oil boom in western North Dakota. To the 80s. To the what? 1980s. The Bakken oil boom, there was an earlier oil boom in the United States, in western North Dakota. I can't speak to that. The Bakken oil boom started in western North Dakota approximately 2009, 2010. Real development. Your question was the relief that the judge would order on Cal 4. We believe that our trustee, I mean, no secret in our case, but our trustee has not lived up to its responsibilities and duties here. We're seeking the court's assistance with that. We have pled a request for collection, assistance with collection in this, of these royalties from our trustee. We're asking them to go take reasonable and prudent actions that a trustee would take to protect its warehouse property. And that will be the scope of the remaining part of Cal 4 in our complaint. And wouldn't that require some filing of litigation on Interior's part? I mean, those lessees and or escrow agents aren't going to give up the money if they think that it actually belongs to North Dakota, if it thinks the title claim is baseless. So is the idea that it would nudge Interior, maybe Interior has a ground to resist, but that it would nudge Interior to file for a title action? The, the court does have the authority, in my opinion, under the restatement and the kind of lack of the law of trust that it can, and I understand the United States to argue that it has discretion and whether or not it brings a lawsuit, those sorts of things. And the Department of Justice can't tell the Department of Justice what to do, but I think courts do tell trustees what to do as a matter of trust law and going forward, or historical trust law. There may be other remedies by a title like this one, there may be other remedies as well. One other remedy would be for the mineral producer to bring an interpleader action and name the tribe and North Dakota and the United States and let them fight it out about who owns the mineral royalties. Yeah, that is another possibility as well, Judge. I mean, I would want to think about how the question applies to that, but that is another possibility as well. So the, so is it part of your claim that Interior has an obligation that it failed to fulfill in somehow not preventing the pre-Durjani opinion exploitation of these oil reserves? Like, how did that happen on land that the, that the nation thought belonged to it? I just didn't hear the last part. How did that happen on land that the nation believed was its own and that was obviously very valuable? I mean, I think those are important questions that we intend to ask our trustee here, or we are asking our trustee in the scope of the two lawsuits that we brought. And so the answer to your question is, yes, I mean, we have concerns about that, right? The nation's position is that the original controlling advocate, go back to the treaties in terms of the riverbed passing to the nation, of course, but even Interior in 1936, and I'm not going to go through the merits here, but yes, we, part of our claims is that our trustee has not protected the tribe's rights as part of, as they should have. That's no secret. We've sued them in two separate cases. I don't have a great deal more. I would just know, I would, I would note that the quiet title, I think the quiet title act then denies the district court of jurisdiction over their intervention of the North Dakota standing, make these arguments, and then it also makes it a non-justiciable issue under the rules of intervention as well. And so that, that's how the quiet title act ties to our opposition to the North Dakota's quest for intervention. Is it your position, is it, is it your position that, well, I'm not sure whether it's your position or not, but is the Department of the Interior's opinion, does that indicate that the United States owns the title to the riverbed or does it indicate that the tribe owns the title to the riverbed? Judge Randolph, the United, the opinion states that the United States holds title to the riverbed in trust for the tribe, the standard sort of Indian country jurisdictional framework. I understand. But, but, you know, my question is when the treaty of Fort Solicitor of Interior, that the riverbed was conveyed to the tribe. The position of the current M opinion is that the riverbed was conveyed to the tribe. Correct. Okay. Final point, just on this idea, okay. Before I want to let you wrap up without the last word, but I asked you what relief you thought the district court could give, and then Interior has argued that short of being required to file a lawsuit, that there isn't an administrative process or other process by which it could gain control of the royalties that, as I understand it, are currently either being retained by the lessees or held in escrow. Do you disagree with that? The, the, we have been, I, this is a very complex issue. If I had, if I could tell you right now that, oh, well, we have found a statute that says the Department of Interior can do this, we would be, we would be pushing that. I'm not saying there's not some procedure out there. We're still analyzing this. The issue here is that this trust property is not subject to federal because they, it's erroneously subject to a state lease, and we're trying to analyze that. I don't have a statute decided to right now, but we continue to look and think about that. The last thing I want to say, or one point I want to make sure I make this point is, is that this idea that the United States could be sent to the, to the court of federal claims under the Tucker Act to rather than, than take title of the property, but rather be paid its value, that's not unusual, right? Under the Quiet Title Act, even when a non-Indian land situation, someone chooses the United States to quiet title and they win, the United States doesn't have to give them title. They can pay them their value. And so, again, it is a careful and thorough thoughtful scheme put together by Congress to address these sorts of issues. The fact that North Dakota has chosen not to follow that path that's laid out for it for the, by the Quiet Title Act, should not allow it to intervene in an APA case between the nation and its trustee. Was it the United States that's responsible for taking, but the title is in the tribe, you told me. And so, so how can it be that the United States is liable under the Fifth Amendment for something that was, that the tribe's doing in negotiating the treaties? The, the title of the land is held by the United States in trust for the tribe. United States owns this land in trust for the tribe. That is the, the, the. Okay. We would ask that you affirm the district court vote. Thank you for the opportunity to argue here today. Thank you, Mr. Pardon. Mr. Oslender, we'll give you three minutes for rebuttal. Thank you, your honor. I'll be very brief and, and I appreciate the indulgence to the court well beyond the allotted time. These are really important questions. I just want to say two things. The, the first point to Ms. Sprague's point about the state restricting its, its supplemental motion to intervene. And I think, I think the court properly questioned that. You know, we, I think we did put forward our best ground. I think we clearly satisfied Rule 24C, which requires that we state the grounds for intervention and be accompanied by a pleading that sets out the standard defense for which intervention is sought. It doesn't require that we put out every single argument that we're going to make against counts three and four or optimize that counts three and four should be denied. And as an intervener, we reserve the ability to make the arguments necessary to, to make that. If the United States makes arguments, we will avoid duplication and making those same arguments in the district court. The other thing I want to, again, just taking a step back, this court views this interest prong of the Rule 24 as a, as a practical inquiry. If you look at the practical consequences of denying intervention, my opponent for the MHA Nation suggested we go to other courts and we file other relief. Yeah, I, I submit that practical consequence here is whatever happened in some other court, even though the law doesn't require us to go find a new lawsuit, this case is going to proceed and this case is going to be resolved and it couldn't end up in enforcing the payment or double payment of, of a significant amount of monies that are otherwise due to the state. This court in, in Fund for Animals, for example, said regardless of whether the intervener could reverse an unfavorable ruling by bringing a separate lawsuit, there's no question that the task of reestablishing the status quo, if the plaintiff succeeds in this case, will be difficult And what are you imagining other than a separate suit that could result in forcing payment or double payment? I'm not sure I understand your question. You just said that, that this suit could force payment or double payment of the amounts and I, my question is how in this suit would that come about? If the court of another litigation by Interior? No, you're wrong. What relief and basically award of monies, a hundred million dollars or more through this litigation that that would, that would compel a payment of funds before the, and let's just say the district court did so without resolving an issue of ownership. Right, and Interior has a, has a obligation to the, to the nation, but it, that wouldn't necessarily, I mean then Interior would have to pay that, but it doesn't necessarily license Interior, I mean it couldn't under, you know, Taylor v. Sturgill, the state could not be bound by that. So in, again, you wouldn't have a dog in that fight unless and until it sounds like, like the existing parties think that there is no way that it could reach into the coffers that, of the money that the state says it has an interest in without any further litigation. If it requires further litigation, you could be there. Well, Your Honor, again, that kind of requires forecasting for what's going to happen in the district court. We agree that. That's what I'm asking you is what is the worst case? What is the thing you imagine the district court could do if you were not in the case? It could somehow take away that money without you being present. Well, Your Honor, if, if this court were firm and the state was not a part of the litigation, let's say and the litigation proceeds either trial or summary judgment, whoever disposes of counts three and four, and the release sought in the tribe's complaint is awarded of all the state monies that are covered by state leases. Same amount of money. And then as Judge Randolph was saying, if I were the lessee, I would file an interpleader right away. I don't want to, I don't want to pay this to the wrong party. So they file an interpleader and you're in there saying, you know, look at this paper. This is, this is a lease that we awarded and this is land that we, we have title to end of story. And that would be litigated in that case. Yeah. But Your Honor, I think this is getting back to the question is intervention in the case that's already been brought up. Oh, I understand. I'm trying to understand what's the worst case for you is and whether that justifies you being in. Yeah. I think the worst case scenario, Your Honor, again, is that the case proceeds without the, without the the district court either rules on ownership or doesn't rule on ownership, but grants the relief that the MNQA nation seeks. The United States goes along with that relief and pays out or compels or does whatever, files actions or whatever to compel the payment of the monies. Let's say interpleaders are filed. The tribe files quiet title action immunity counts. And so those are never heard by the district court or wherever those interpleader suits are filed. Right. So it's a, sort of a series of, of how this might ultimately play out, but the state is not gaining the system here. All that we're trying to do is intervene in defense of the case that's been brought period. And in other words, the worst case scenario may not be that you have no ability to get money to which you think you're entitled because you, there could be separate litigation that would give you the money that you think you're owed. But the worst case scenario is still, you think worse off than being involved in this case, because you would still need to be involved in separate litigation. And that's worse than not having to be involved in separate litigation. Yes, Your Honor. I believe that, you know, in use and in funds for animals, this court has said that, you know, we may, it may not be racially dichotomy, but you'd be severely hampered by adjudication. In this case, that would be at least, you know, heavily get heavy weight or be persuasive. In another case, even if you were to vindicate your approach in another court, that's the fragmented approach to litigation that this court doesn't, it doesn't, doesn't sanction. And so it just makes all the sense in the world for if MNJ Nation is going to pursue these claims that the state be able to present its arguments in defense of those. And is it a ground for denying intervention that you could still be made whole in another piece of litigation? I actually don't know the answer. I believe the answer is no under this court's precedent, Your Honor, because again, it's not, I think that's what, again, just kind of news and fun for animals is to specific cases, but they state that the prospect of future litigation doesn't diminish your ability to intervene in the litigation that's here. And the reason for that, again, is to judicial economy, but also because, you know, well, well-respected judge in the district court here were to issue a ruling and another judge were to get it, you know, that judge would obviously pay attention to what the, what the first rule of the state would have been for the party. Does the state, does the state of North Dakota impose severance taxes? Your Honor, I believe that, I don't know the answer to that. I'm embarrassed that I don't. I believe that the state leases impose a royalty similar to what the federal leases do. And that is a basis for share of production, not rather than a tax. I may be wrong on that. I apologize. I don't know. Well, I'm just wondering if there's another loss involved here, that if the royalty takes into account what would otherwise be severance taxes, and then if the royalties are paid over to the tribe instead of to the state, that deprives the state of the royalties of severance taxes. And the Supreme Court in Cotton Petroleum held that the state of Utah, in that case, or New Mexico in that case, was perfectly entitled to tax mineral leases on Indian land. And I'm just wondering if that's another, you know, situation where the state suffers injury. Yes, Your Honor. We've alleged in our, and argued in our briefs that the state has proprietary and financial interests, but also sovereign and property interests just by being the sovereign state of North Dakota. And so we agree, Your Honor, that the transformation of state land to land held by somebody else is a diminishment of the state's sovereign rights. Mr. Aslan, did you have any insight different from what the nation told us about when these oil leases were granted? Your Honor, I believe that some of them are quite old. I believe they predate 2009, 2010. I believe there is an uptick around that time, and that sort of coincides with the expansion of horizontal drilling technology. Again, these lands were historical, Missouri River, and they're largely undated now by Lake Sacagawea and the Garrison Dam. So the way that you reach those minerals is by drilling from upland locations and producing them via horizontal drilling. And you said some of them are quite old. You mean going back before? Yeah, I believe so. I believe they go back. I think that's probably correct. I just don't have an accounting, and I don't want to answer wrong on the record, but I do believe so. What was the state's basis for granting the leases at that time, the understanding? They're state lands. I mean, the state's position is that these have been lands that were granted when the state entered the union as part of the Equal Footing Doctrine. So it was the state's position that was inconsistent with the United States' position at the time that the state went ahead and granted leases on the theory that the state was right. I'm not saying that was the wrong thing to do, but I'm just trying to understand. I believe that the federal position has been vacillating, Your Honor. Again, I think we could just quibble with the presentation and the intervention issue, but, you know, about the background of the case, that the United States and federal agencies have taken different positions, sometimes respecting the state's ownership, sometimes reflecting the American nation's ownership. The first comprehensive solicitor's opinion was in 2017, and that was the Tompkins opinion, replaced by the Georgiani opinion, replaced by the Andrews opinion. So we've had three opinions in just five years, but it took until 2017 to issue a comprehensive one way or the other about it. So I don't think the state was plowing what the federal agency was doing. In 1991, the Supreme Court decided the United States versus Montana and clearly ruled against the United States' claim of ownership of the riverbed in the Bighorn River. So I think from that point on, the state certainly had a justification for treating themselves as the owner of the riverbed. Thank you. Questions? Thank you for your time. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Randolph